Your case is number 18, 1803, Almanza v. United States. Mr. Rosenthal. Good morning, Your Honors. May it please the Court. The claims court in this case held that the plaintiffs were entitled to no pay for two types of activities that they did during the training program. First, the plaintiffs created detailed evaluations of canines and other employees who the plaintiffs were administering training to during the regular work day, which is actually what took up most of plaintiff's time during this program. Counselor, is it your contention that Almanza and the other agents were actually directed to participate in the training? Or was the training voluntary? Your Honor, we think that the plaintiffs did choose voluntarily to apply for the course after they were solicited to do so by the institution. But that kind of puts you on a slippery slope just from the very beginning, correct? Well, I would say, Your Honor, that the regulations, so the way that the OPM regulation is set up, that prong, it relates to subparagraph A2. Subparagraph A4 says simply that an employee is entitled to pay for productive work that they do during the training program, period. It does not say that that depends on whether the employees voluntarily chose to apply for that. And there are a couple examples of that from cases that we think are relevant. So one is a training course, this is a Sixth Circuit decision. The regulation that you just cited, does that go to training for the current position, the requirements or obligations of the current job that Almanza had, or towards upward mobility, the possibility of getting another position? So again, subparagraph A2 is the one. Basically, let me maybe step back here. What the regulation does, in our view, is sets up a few different paths for which an employee could get paid for training. So one of them, as you're saying, is that if it's a job-related training, makes them better at their job, rather than upward mobility training. And secondly, if they're directed to participate. So that's one prong of the regulation. Are you arguing that's what this is about, this case is about? We divide them into two different types of activities that the plaintiffs did during the program. So we believe that as to one type, which is the completion of these evaluations, the white sheets and green sheets, that would be analyzed under a different prong of the regulation, which is subparagraph A4. And what that paragraph says is, separate from the issue of whether the training is job-related and whether they're directed to participate, separate from that, that an employee is entitled to pay for training for productive work that they perform during the training. So in other words, even if they voluntarily chose to go to the training course, if during the course they're doing something productive for the employer, some sort of work for the employer that otherwise, perhaps, a regular paid employee would be doing outside of training, that the employee has to be paid for that. And we think that's the analysis that the court should have applied to this particular type of activity, which is the white sheets and the green sheets, which are evaluations of canines and canine clients. Well, that came, showed up late in the litigation, right? Amending the complaint? Yes, after- At a late stage. I'm not certain this fine distinction on the distinction between 551A1 and 2 and A4 was presented. Well, actually, what- I didn't see any of that. I agree with that partially, Your Honor. After discovery, when there was testimony about this activity in terms of the white sheets and green sheets, the plaintiffs amended their complaint to add that. That was before the summary judgment briefing. And then in the summary judgment briefing, after the government raised the OPM regulation in its brief, in the reply brief, the plaintiffs argued that they were entitled to pay under A4, which is the one that governs productive work in the program. And I think that is at page eight to nine of the reply brief that the plaintiffs filed below. So they argued there that- A4 doing anything more than saying if you did training either during ordinary hours or after hours, and it was compensable, it's going to be considered hours of work. So in order to get paid, it's got to be work. Right. So what the regulation sets up in A1, 2, and 3, or 1 and 2, time that you spent during working hours, right, is considered hours of work. And then you have training outside of working hours. Why isn't that, why is 4 different? So what, as we understand from 4, so the A1, 2, and 4 provide three different sort of paths to compensation. So A1 says if you go to a training during your regular work day, you have to get paid for that. So that's not an issue here, because the plaintiffs were paid for the training during the regular work day. Then A2 and A4 could both apply to after hours training. And what A4 does in our view, it says that even if the training itself isn't compensable under A2, if the employee is performing work, that's hours of work. And then the OPM regulations also say at 551-401 that in calculating overtime pay, you use the employee's hours of work. So. I have a couple of questions about the sheets that we're talking about, the white and, what is it, green sheets? White and green sheets, yes, Your Honor. What, is there any evidence in the record what happened to those sheets once they were filled out and handed in during the training program? Yes, so the white sheets, the testimony showed, this is the testimony of the 30B6 designee at, I believe it starts at Appendix 11-16. Now I know what they're ordinarily used for. Yeah. And eventually they can even be used in court. Right, exactly. But I'm talking about these particular sheets that were filled out during the training program. Yes, so my understanding. What's the value of those sheets and how are they related to work under the regulation? So those particular sheets are the ones that can be used in court later, so. But this is training, there wasn't, no one's being arrested here, right? Well, so if, when those canines that our plaintiffs have trained go out and if they find evidence of a crime, and that's presented in court, then the government needs to be able to show that this canine received adequate training. Is that possible in this, is that eventuality ever going to occur in this instance? Yes, the record says that the plaintiffs were training canines to go into service at the border. So this was not simply a practice exercise. The canines they were training were ones that were going to be sent into service at the border after the course. And the canine handlers they were training were ones who were gonna go into service after the course. So the training was real time at the border? No. I thought it was at some training facility. I'm sorry, that's not what I meant, Your Honor. That what the plaintiffs were doing was preparing these canines and these canine handlers so that after the course they would go into service. Right, so these sheets were like practice in essence, right? No, I. They don't have any value. I don't see anything in the record that indicates that they actually had a type of value that they have if the sheets are compiled as a result of actual work down at the border, for example. So what, again, starting out of Appendix 1160, what the designee testified was that if this canine, for example, were to detect drugs at the border, then the government would have to be able to prove that that canine was adequately trained to do that. I get that part. And so that's when they would use. Those sheets are compiled and completed in real time, in real work. No, Your Honor, those sheets are the ones that are done in this training program where the canines are getting the training performed by our plaintiffs. Those sheets are the ones that the government's going to use to show that these canines were adequately trained, the ones that our plaintiffs are filling out during the course. That's what the record shows. Because of this course is the one, it's a multi-track course. The plaintiffs are receiving training, but they're also providing training to the canines and the canine handlers. And the canines and canine handlers are then going to go into service at the border, and the government needs a record of the training that they received. So what the plaintiffs are doing is creating that record that the government can use in the future. And what the plaintiffs are also doing is filling out the green sheets that the government's going to use to assign grades to the canine handlers and decide whether to certify them as canine handlers. So this is work that is providing an immediate benefit to the employer, in our view, in that sense. I would like to- Although the core federal claims dealt in footnote three with this issue, right? Yes, correct, Your Honor. By saying essentially this late added claim and the amended complaint at the end of the thing was simply another iteration of the training claim. Correct, Your Honor. The human beings who were filling out the sheets, that was part of their training, to make certain that they knew how to fill out the sheets correctly and that sort of thing. So the way in which this issue was greeted and decided for purposes of our appeal was that the core federal claim said, this is another version of your training claim, i.e. another version of your claim under two. I think that is what the claim score did. I think in order for you to get where you've been in terms of the argument, you have to convince us that the core federal claim was wrong in treating the green sheet, white sheet as part of training because it was clearly part of their training because they never knew how to fill one of these things out before. Because when they were just themselves on the border with the canines, they weren't filling out any forms. So they had to go to filling out form school. Right. I mean, that was at least, that's the mindset of the core federal claim. So we think that was a legally erroneous interpretation of the regulation. Did you argue before the court? Well, no, not of the regulation, of the conduct. Well, the court was saying, if we're talking here about certain kinds of conduct for which your clients are seeking remuneration. Yes. And some of the conduct was doing homework after hours when the program. Yes. Category one, which we haven't really talked about. Category two was, and of course, during the day, they had to fill out these sheets and they were filling out the sheets at night too. Yes.  It was also partly at night. Yes, exactly. So you have to convince me because I have to find error below that the core federal claims was just dead wrong to consider the filling out the sheets as part of the training. Oh, well, we actually have a different view, Your Honor. We think that under the regulation. You hear where I'm coming from? Yes, absolutely. That's the basis of the decision that footnote three is why we're reviewing this issue. And we agree that the record supports that these sheets had two purposes. One, and one was a learning purpose. But the problem, the error here, is that that's not the analysis that the court is supposed to apply under the regulation. The analysis says, if you do productive work during a training program. So it's not, it's either a learning or it's work. That's not what the regulation says. This is illustrated by the Sixth Circuit Farmer case. So this is a case involving a patrol officer, or I'm sorry, a police officer is a desk officer who's learning to be a patrol officer. And for learning to be a patrol officer, they sent him out on patrol to do the patrol with a more senior officer mentoring him. And so he was actually learning to be a patrol officer, but he was also doing the patrol simultaneously. And the Sixth Circuit said, in the Farmer case, that he should be compensated for that. So we think where the claims court went on the wrong path here, was it should have said, so yes, this part of the purpose of this work is for the plaintiffs to learn how to fill out these sheets. But that's not the end of the analysis. Did you in the trial court consider separating time spent in study from the time spent with the sheets as a halfway path towards compensation? So in the reply brief, we did separately address the two issues. So if you look at the reply brief at, I think it's at appendix 3199. Okay, and these were quantified in terms of time as to how to accomplish such a split result, if that were? Yes, there was testimony about how much time was spent on each of the two categories of activities. I don't think that was put before the claims court because at that point it was, the issue was simply compensability. So there wasn't a need, they weren't looking at damages. There wasn't a need to quantify the time. I see that my time is ticking here into my rebuttal. We'll save some rebuttal. Did you have a question at this stage? Thank you. Okay, thank you. Mr. Rossi. Good morning and may it please the court. The trial court's decision blow was well-reasoned, careful and should be affirmed here. As your honors were just discussing, there is a question of whether the trial court should have applied 551.423, subsection A2 or A4 in this case. In two other cases, both of the trial court level, these types of activities, after-hour training activities were in-licensed using subsection A2, as we pointed out in a brief, as well as an arbitrated decision, as well as the 11th Circuit itself also specifically applied subsection A2 to after-hours training activities. And in one of the Court of Federal Claims cases, full case, this court, the Federal Circuit, affirmed that case in full in terms of the analytical structure of what to apply. With regard to the subsection A4 that the appellants have raised here, the entirety of their brief below mentions or just talks about subsection A4 with regard to the claims in four sentences at appendix 31, 81 to 82. They lump all of this activity together, the studying, the green sheets, and say this is all part of the training. They admit that this is all part of the training that these DCIC instructors go through in order to be certified to become teachers. So to the extent, as I think Judge Clever described it accurately, there's a specific narrowly tailored subsection of the regulation 551.423A2 that deals specifically with training activities that occur after hours. And the appellants have already admitted, and we identify all the citation in the brief, the studying time, the completion of these green sheets and white sheets was part of their learning process to become certified instructors. Right, but he's saying it has two effects. It both is part of training for them, but from the point of view of the agency, the agency would like to know how the dog performed because the dog that's used in the training facility, whether it's out in Virginia or down in Texas or wherever, right, that dog's gonna go out in the field, right? Correct. Okay, so let's assume the dog during the training program misbehaved. That's information that's valuable for the agency to know, right? If the dog misbehaved. Presumably, Your Honor, yes. Presumably, I mean, what happens if the dog bit everybody? I expect the dog wouldn't be put into service, but yeah. So the point is your adversary's trying to make a bifurcated argument. He's trying to say, yes, I will admit to you that the filling out the green and the yellow forms had two reasons. One was to train the officer to do it, and we're not asking to be compensated for that. What we're being asked for, it was work they were actually doing because, you know, I think Judge Vranen asked some very interesting questions about whether or not the record really shows that the filling out these forms had any value. But assume they do, why wouldn't it be potentially compensable under A-4? I think that in the analysis that this court should apply here, the regulation that should be applied is subsection A-2 because it is more narrowly tailored to the specific after-hours training activities. And that combined with the fact that at the trial court, they urged the court at Appendix A-4. Well, I appreciate what you're saying there, but A-4 says time spent by employee performing work for the agency during a period of training. And we know that a period of training can have two components. One, during ordinary office hours, during hours, right? For example, while these officers were during ordinary hours filling out these forms, they got compensated, right? I presumably, yes, Your Honor. Right. So the regulation A-4 recognizes that your period of training can have two components, one during normal office hours and the other after, right? Correct, Your Honor. So why can't work being performed by during, not during normal office hours, but after normal office hours that we were actually performing work, why wouldn't that be compensated on the face of A-4? Well, I think that there's certainly a possibility that certain activities can be considered work, can be considered hours of work that occur after hours and could be compensated. But in this particular case, what the plaintiffs did at Appendix 31-81 is to say to the trial court, you should, all of the activities that we're talking about here are hours of work under A-2. They're all related, all relate in order to become certified as part of their learning process. And they urged the court to apply that particular subsection. And that's what footnote four reflects. I'm sorry? That's what footnote three reflects. Yes, Your Honor. And the trial court- So you're in essence saying that to the extent that they're making an argument that filling out the green sheets, right, is not just training, but it's work that they've waived that argument? That's right, Your Honor. In fact, I mean, as we described in our brief, the appellants who found new counsel on appeal here have raised a number of completely novel issues that they not only didn't raise below specifically, but in the case of, for instance, the billings argument, it's an argument that they specifically urged the trial court to adopt Section A-2 and analyze their claims under that section and said, look, we win if the court applies subsection A-2. And now on appeal, they're saying the entire section is invalid. And with regard to footnote three of the trial court's opinion, the trial court said, looking at these activities where they've admitted that this is all part of the learning process, they've not adduced any proof that this is, that it can be compensable under the particular subsection. Where did they say that? I'm looking at footnote, you're talking about footnote three? Yes, Your Honor. Okay. Footnote three, they introduced a new claim, right? They acknowledge it was a form of study or homework, the canine instructor. As a result, okay, it's therefore gonna be treated under A-2. I don't see anything about the Court of Federal Claims casting doubt on the value of the work involved in the green and white sheets. Are you looking at the same footnote? I am, Your Honor. I'm trying to find a section where the court describes the presentation of their evidence as- Oh, thank you. Not satisfying. Oh, it's actually the paragraph immediately before it in the main part of the opinion where Judge Kaplan says, A-4 requires plaintiffs to show that- Hang on a second, we're on appendix nine? Yes, Your Honor. And which they're- The last full paragraph of the page. The last full paragraph? Yes. Begins thus subsection A-4. Okay. The court said, in this case where the plaintiffs introduced no evidence to support such a claim. So that's what I was referencing. Okay, fine. Thank you very much. I'm sorry, I thought you- No. It wasn't in the footnote? Quite right. So I think that when the court applies the proper- Well, so your argument would be that it's the burden is on the appellant to prove that that's a clearly erroneous fact finding? Unquestionably, Your Honor, yes. And related to this issue about waiver, I just wanna mention briefly, even if the court were to consider this Billings argument about the validity of the regulation as a purely legal question, this court has, on numerous occasions, concluded that a waiver of a legal, although a waiver of a legal argument may be prudential, when parties don't raise it below, if you look at the Novasteel case, for example, the party actually affirmatively raised an argument in its reply brief, and this court said, even though you affirmatively raised it in your briefing at summary judgment, we consider it waived. In this particular case, the appellants directed the trial court to apply subsection A-2, as well as A-1 and A-4, I believe, or 551-423-D. They specifically said, you need to apply the subsection, and under it, we win. If the doctrine of waiver as applied to a legal argument is ever gonna be applied in a case, then it has to be applied in a case like this, where they affirmatively direct the trial court in one direction, and then our appeal decides to reverse field. If the court has no further questions. Any questions? Any more questions? Thank you. Thank you. Mr. Rosenthal, you have your rebuttal. Thank you. So I'd like to just respond to the argument that was just made. So on page nine of the opinion is where my opposing counsel says the claims court did address this issue. But if you look at the second sentence of that paragraph, it shows the court's reasoning there. It says, the court said, even if those efforts, meaning the training, could be considered work, then parentheses, a conclusion about which this court expresses no opinion. So the court is not making a finding about whether this is work. Then the court goes on to say, it appears that such work was performed during regular duty hours for which plaintiffs were compensated. And there's no citation to the record there because the record showed that some of that work, these white sheets and green sheets, were done after hours. So that's where the claims court made a factual error in finding there was no dispute of fact. In terms of what we raised below, if we look at appendix 3181, which is the page that my opposing counsel cited to, we said below, 5 CFR 51423A4 allows for payment of compensation. Plaintiffs performed work after hours and helped supervisors produce new canine handlers. Plaintiffs also helped create new canine teams and train new canines. And then it goes on for another, it says plaintiffs' work products included trained canines, handlers, and teams. So we did argue that what the plaintiffs were doing as part of this course was work in terms of training these canines and canine handlers. And we think that the claims court did not analyze that correctly. At a minimum, we would ask for that issue to be sent back for a more full analysis of that particular issue. I would like to also address the other component of this, which I haven't had a chance to talk about much, which is the study time. And there, that's where we are under A2 if the court decides to apply that rule. But we think that what we argued below about that particular issue was that under the FLSA, as this court held in Bull, for example, an employee is entitled for work that the employer suffers and permits, meaning that the employer knows about the work. So where the regulation appears to, that A2 appears to require that an employee be directed to attend a training, that's not consistent with this body of law under the FLSA, which says that the standard is actually whether the employer suffers or permits the work. And we presented a lot of evidence here that the study time is something that was actually encouraged by the employer, that the employer knew about it. And in fact, the course now has been changed to provide paid study time during the work day. So if we're looking at A2 for the study time, we think the court should not apply the prong which says they have to be directed to participate. And there's a DOL opinion letter which I'd like to briefly direct the court's attention to, which also addresses that issue. This is- It's on both ways. I'm sorry? The opinion letters go both ways, right? Actually, both of the opinion letters that were cited rule for the employees. There was one of the opinion letters had some language that the opposing side found useful to it. And the basic OPM rule, the basic principle does recognize time that's suffered or permitted to work, right? Yes. I-51-401. Yes. And both OPM and labor have special rules for training. Yes, that's fair. And both sides recognize that whether or not the training was ordered or whether it was voluntary matters in the analysis. Yes. Both do. It just so happens that OPM looks at the voluntariness issue through a different lens for federal workers than labor looks at it for everybody else. I would say it's actually a little more than that. But in both of the sets of regulations that deal with training, both labor for the entire workforce out there considers whether or not the work was voluntary or not as a factor in deciding whether or not you're going to get it. So two regulations set up different presumptions. I understand how they work. But if I'd like to, this particular opinion- But your overall argument that OPM should lose because it doesn't recognize, it ignores work that's suffered or permitted isn't true. Because as a general proposition, the basic principle driving OPM is exactly like labor's. They recognize work that is both suffered and permitted to happen. But as I said, both agencies for entirely different workforces choose to look at the voluntariness issue when it comes to training in a different light. Well, I would say- And the law says that there's nothing wrong with OPM having a different take on how it's going to treat government workers than how the Department of Labor thinks the composite IBM, General Motors, and everybody else ought to be treated. If there's a- It has to provide a justification. But I think if you look at that opinion letter, 2009-13, that was a purely voluntary training. Employees were not directed to participate. And the Department of Labor said that they still had to be paid for their after-hours work. So we would ask you, because the plaintiffs were providing a valuable service to CBP and to the country by going to this training,  Thank you. Thank you. Thank you, Blue. The case is taken under submission.